ORIGINAL

FILED

JUL 17 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ 𝒳𝓂 _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALEX RAY CHARFAUROS,

                          Petitioner,

v.

SCOTT KERNAN, Warden,

                          Respondent.

Case No.: 3:17-cv-00266-BAS-KSC

**REPORT AND
RECOMMENDATION RE
PETITIONER'S AMENDED WRIT
OF HABEAS CORPUS**

      Petitioner Alex Ray Charfauros, a state prisoner proceeding *pro se*, filed an Amended Petition for Writ of Habeas Corpus ("Petition") challenging his August 23, 2013 conviction in San Diego Superior Court Case No. SCD234440 for, *inter alia*, the second degree murder of a police officer. [Doc. No. 3].

      This Court has reviewed the Petition and exhibits [Doc. No. 3]; respondent's Answer and supporting Memorandum of Points and Authorities [Doc. No. 24]; the Lodgments submitted by respondent, including the state court record [Doc. No. 25]; and petitioner's Traverse. [Doc. No. 26]. For the reasons outlined below, IT IS HEREBY **RECOMMENDED** that the District Court **DENY** the Petition in its entirety.

/ / /

1

# PROCEDURAL HISTORY

Petitioner Alex R. Charfauros is in the custody of respondent based upon a valid judgment entered on August 23, 2013, in San Diego County where a jury convicted him of fifteen criminal offenses. Petitioner was found guilty of: second degree murder of a police officer; four counts of premeditated attempted murder of a police officer; attempting to harm a police dog resulting in serious injury; four counts related to the possession or sale of methamphetamine; resisting, delaying, or obstructing a police officer and conspiracy to commit the same offense; conspiracy to commit an act injurious to the public health or public morals or to pervert or obstruct justice or the due administration of laws; possession of a firearm by a felon; and, unlawful possession of ammunition. In connection with several of the counts, the jury also found petitioner was vicariously armed with a firearm. [Doc. No. 12-1, at p. 2]. Petitioner was sentenced to prison for an indeterminate term of 85 years to life plus a determinate term of 11 years. [*Id.* at p. 8].

Through counsel, petitioner filed an appeal on September 23, 2013.[1] [Doc. No. 12-1]. The California Court of Appeal rejected petitioner's first three claims, modified the judgment to reflect corrected sentences on counts 7, 9, 10, 11, 12, and 14, and corrected the laboratory fee. [*Id.* at p. 3]. As modified, the court affirmed the judgment. [*Id.*].

Petitioner filed a writ of habeas corpus on October 15, 2014, while his direct appeal was pending.[2] The California Court of Appeal considered the habeas corpus petition at the same time as his direct appeal. Concurrent with its order modifying the judgment on direct appeal, the Court of Appeal filed an order denying the petition. [Doc No. 12-2]. The California Supreme Court denied Petitioner's petition for review on December 9, 2015. [Doc. No. 12-3 at p. 1].

On February 10, 2017, petitioner filed a two-sentence federal petition for writ of habeas corpus. [Doc. No. 1]. In its Order dated February 16, 2017, District Judge Bashant

---

[1] *People v. Charfauros*, D064666
[2] *In Re Alex Charfauros*, D066787

2

dismissed the petition without prejudice because petitioner failed to name a proper respondent, failed to state grounds for relief, and failed to allege exhaustion of state judicial remedies. [Doc. No. 2]. Petitioner was instructed to file a First Amended Petition, which he did on April 10, 2017 [Doc. No. 3]. Respondent filed a Motion to Dismiss contending the First Amended Petition was time-barred under the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). [Doc. No. 11, at p. 2]. This Court issued a Report and Recommendation that found that petitioner did not run afoul of the one year statute of limitations because he relied on a date set by the District Court by which he could file an amended petition. [Doc. No. 18]. District Judge Bashant adopted the Report and Recommendation thereby denying respondent's Motion to Dismiss. [Doc. No. 19].

Respondent filed an Answer to the Petition [Doc. No. 24] and lodged the state court record with this Court [Doc. No. 25] on February 22, 2018, and petitioner filed a Traverse on March 26, 2018. [Doc. No. 26].

## FACTUAL BACKGROUND

In reviewing a federal petition for writ of habeas corpus, this Court gives deference to the state court findings of fact and presumes them to be correct. Petitioner may rebut this presumption, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992). The following facts are taken from the California Court of Appeals' unpublished decision denying petitioner's direct appeal in Case No. D066787 (San Diego Superior Court No. SCD235440):

> In October 2010, Charfauros, who was on probation, lived in a two-bedroom upstairs apartment in San Diego with Holim Lee and Lee's girlfriend, Lucky Xayasene. Lee was wanted on a warrant for assault with a deadly weapon, and United States Marshal Service Deputy Jeffrey Roxas obtained information that Lee had been seen two weeks earlier at Charfauros's apartment. In an attempt to ascertain Lee's whereabouts, Deputy Roxas asked Charfauros's probation officer, Officer Bobby Burns, if they could go together to search Charfauros's apartment.

On October 27, 2010, around 10:00 p.m., a group of probation officers and United States Marshals Service deputies arrived unannounced at Charfauros's apartment to conduct a probation search. As the officers prepared to knock on the apartment door, the door was opened from inside by a surprised Asian man. Officer Burns did not think the man looked like Charfauros, and he therefore asked if Charfauros was there. The man said, "Nope," and slammed and locked the door.

The officers kicked in the locked door and began to move through the apartment. A bedroom door at the end of the hallway was hanging off its hinges and had a large hole in the middle. That bedroom was later determined to be Charfauros's room. The door to the second bedroom was closed. That bedroom was later determined to be Lee and Xayasene's bedroom.

Meanwhile, an officer posted outside the apartment saw Charfauros trying to climb down a ladder out of his bedroom window. The officer directed Charfauros to go back inside the apartment, and Charfauros complied. A short time later, the officers inside the apartment saw Charfauros's hand extending out of the doorway of his bedroom. Charfauros eventually complied with orders to get down on the ground and crawl down the hallway to the living room. Charfauros was handcuffed and taken out onto a landing and then downstairs into a courtyard.

Based on Officer Burns's belief that Charfauros was not the person who opened and then slammed the door, the officers believed someone else was likely still inside the apartment, and they radioed for assistance from the San Diego Police Department. While waiting for the police officers to arrive, several probation officers heard clicking or crackling sounds coming from Lee and Xayasene's closed bedroom.

After Charfauros was taken into custody, police officers, probation officers and United States Marshals Service deputies repeatedly asked Charfauros to tell them who was in the apartment and whether there were any weapons or drugs in the apartment. Charfauros was questioned by several officers from the time he was handcuffed in the apartment through the time that he was detained downstairs in the courtyard. Officers who participated in or overheard the questioning of Charfauros testified that Charfauros replied that he did not know who was in the apartment because he had been asleep before the officers arrived. Several officers heard Charfauros state that there were no weapons in the apartment.

3:17-cv-00266-BAS-KSC

San Diego Police Department officers arrived on the scene and relieved the probation officers and United States Marshals Service deputies who were posted in the apartment. Police officers determined based on photographic identifications made by some of the probation officers that the person who opened and then slammed the door to the apartment was likely Lee, and that Lee was still in the apartment.

Police officers decided to employ a police dog and to attempt to gain entry to Lee and Xayasene's closed bedroom by kicking in the door. While San Diego Police Officer Lorenzo Ruiz kicked in the door, San Diego Police Officers Michael Chinn, Travis Whipple, Christopher Wilson and Michael McLeod, along with his police dog Monty, took positions in the apartment. Immediately after Officer Ruiz kicked open the bedroom door, a volley of gunfire erupted from inside the bedroom. Officers McLeod, Chinn and Whipple returned fire. Officer Wilson was fatally shot in the head. Police dog Monty received a gunshot wound to his snout.

During the shooting, Charfauros remained handcuffed in the downstairs courtyard, still claiming that he did not know who was in the apartment and that no weapons were present. One officer testified that during the shooting, Charfauros said, "'Oh shit, oh shit. I can't believe this is happening.'" Approximately 20 minutes had elapsed from the time that Charfauros was taken out of the apartment in handcuffs to the eruption of gunfire inside the apartment.

The officers called for the assistance of the SWAT team, and the apartment was eventually cleared. Lee and Xayasene were found dead in the bedroom, having both committed suicide by gunshots to their heads. Two other people, Patrick Luangrath and Melissa Ortiz were removed from the bedroom and taken into custody. There were several firearms in Lee and Xayasene's bedroom, along with ammunition. In addition over 80 grams of methamphetamine was found in the apartment. Lee's gun fired the shot that killed Officer Wilson. Xayasene had a .45 caliber handgun in her hand, which was determined to have also fired rounds. Charfauros's DNA was found on a shotgun that was recovered from Lee and Xayasene's bedroom, and shotgun shells were located in Charfauros's bedroom.

Charfauros was charged with the murder of Officer Wilson; the attempted murder of Officers Ruiz, Chinn, Whipple and McLeod; causing serious injury to police dog Monty; along with nine other charges, including resisting a police officer, charges related to the methamphetamine and the

firearms and ammunition found in the apartment, and two other conspiracy charges.

At trial, several officers testified that Charfauros's refusal to give information about who was in the apartment and his statements that there were no weapons in the apartment were important factors in how events developed. As the officers testified, had Charfauros told them that firearms were present in the closed bedroom, they would have called for a SWAT team response rather than attempting to enter the closed bedroom themselves.

Several officers also testified at trial that although Officer Burns did not believe at the time of the incident that Charfauros was the person at the apartment door, upon further review of photographic evidence, they concluded that it was Charfauros, not Lee, who opened and then slammed the apartment door. The jury also heard evidence that Charfauros was an active member of a criminal street gang and was selling methamphetamine together with Lee. Videos from cell phones found in the apartment showed Charfauros, Lee and Xayasene smoking methamphetamine in Lee and Xayasene's bedroom on multiple occasions and established that there had been several guns in plain sight in the apartment's living room and Lee and Xayasene's bedroom on October 26, 2010, the day before the shooting.

The jury found Charfauros guilty of second degree murder of a police officer (§§ 187, subd. (a), 190, subd. (b) [count 1]); four counts of willful, deliberate and premeditated attempted murder of a police officer (§§ 664, subd. (e), 187, subd. (a), 189 [counts 2-5]); attempting to harm a police dog resulting in serious injury (§§ 600, subds. (a), (c), 664 [count 6]); possessing methamphetamine while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a) [count 7]); possession for sale of methamphetamine (*id.*, § 11378 [count 9]); maintaining a place for selling methamphetamine (*id.*, § 11366 [count 12]); conspiracy to sell or furnish methamphetamine (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, § 11379 [count 15]); resisting, delaying or obstructing a police officer (§ 148, subd. (a)(1) [count 16]); conspiracy to delay or obstruct a police officer (§§ 148, subd. (a)(1), 182, subd. (a)(1) [count 13]); conspiracy to commit an act injurious to the public health or public morals or to pervert or obstruct justice or the due administration of the laws (§ 182, subd. (a)(5) [count 14]); possession of a firearm by a felon (former § 12021, subd. (a)(1) [count 10]); and unlawful possession of ammunition (former § 12316, subd. (b)(1) [count 11]). For several of the counts, the jury further found that that Charfauros was vicariously armed with a firearm. (§ 12022, subd. (a)(1).)

Charfauros was sentenced to prison for an indeterminate term of 85 years to life, plus a determinate term of 11 years.

[Doc. No. 25-44 at pp. 3-8].

## **STANDARD OF REVIEW**

Federal habeas corpus relief is available only to those who are in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "[A] mere error of state law is not a denial of due process." *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982) (internal quotations omitted).

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings. 28 U.S.C. § 2254(d)(1)&(2); *Early v. Packer*, 537 U.S. 3, 9 (2002).

For purposes of 28 U.S.C. § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyear v. Andrade*, 538 U.S. 63, 71–72 (2003). Therefore, a lack of controlling Supreme Court precedent can preclude habeas corpus relief. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

In deciding a state prisoner's habeas petition under AEDPA, a federal court applies a highly deferential standard of review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To be objectively reasonable, a state court's decision need not specifically cite

3:17-cv-00266-BAS-KSC

or rely on Supreme Court precedent. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court's decision will not be "contrary to clearly established Federal law." *Early*, 537 U.S. at 8.

AEDPA "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation and quotations omitted). Federal habeas relief cannot be granted simply because a reviewing court concludes the state court decision is erroneous or incorrect based on its own independent judgment. *Id.* Habeas relief is only available under section 2254(d)(1) when "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with Supreme Court precedents." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The AEDPA standard is "difficult to meet." *Id.* at 102.

In addition, review under section 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). When there is no reasoned decision from a state's highest court, a federal court "looks through" to the "last reasoned state-court opinion" and presumes this provides the basis for the higher court's denial. *Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007).

Here, the California Supreme Court denied the Petition without comment and therefore the California Court of Appeal's unpublished opinion is the "last reasoned state court opinion" in the docket. *See* Doc. No. 25-44; *Ylst*, 501 U.S. at 805–06. It is there the Court will look when evaluating petitioner's claims for habeas relief.

/ / /

/ / /

/ / /

/ / /

/ / /

8

## DISCUSSION

Section I addresses petitioner's sufficiency of evidence claim. Section II addresses petitioner's claims that the admission of certain testimony was prejudicial and that he received ineffective assistance of counsel because his counsel failed to object when the prosecution sought to admit the testimony. Section III addresses petitioner's challenge of sentencing enhancements.

**I.    Review of Petitioner's Sufficiency of Evidence Claim**

**A.    Clearly Established Supreme Court Law**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to federal habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Reversal on an insufficiency of evidence claim is, in essence, a "determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988)).

The jury bears the burden of deciding "what conclusions should be drawn from evidence admitted at trial" and a habeas court can set aside a jury verdict on the ground of insufficient evidence *only if* no rational trier of fact could have agreed with the jury. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). "The reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts" by assuming that the jury resolved all conflicts in support of the verdict. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996); *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). If the record supports competing inferences, the court "must presume – even if it does not

affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

The court applies the standard to the applicable state law that defines the elements of the crime. *Id.* at 324 n.16; *see also Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (*en banc*). Yet the Court must apply an additional layer of deference in applying the *Jackson* standard, and "must ask whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005), quoting 28 U.S.C. § 2254(d)(1). Federal habeas relief is not intended to correct errors below, but to "guard against extreme malfunctions in the state criminal justice systems." *Richter*, 562 U.S. at 103, *quoting Jackson*, 443 U.S. at 332 n.5.

## B.    The Last Reasoned State Court Opinion and Analysis

In its unpublished decision affirming petitioner's conviction, the California Court of Appeal responded to petitioner's sufficiency of evidence argument by applying a standard of review equivalent to the standard set forth by the Supreme Court in *Jackson v. Virginia*. [Doc. No. 25-44]. On direct appeal, petitioner challenged the sufficiency of evidence supporting the assaultive crimes for which he was convicted. The People had presented three different theories for his liability, and the Court found sufficient evidence to support convictions under two of the theories.[3] [*Id.* at pp. 9-10]. The first was whether substantial evidence existed to show the assaultive crimes were "a natural and probable consequence of the crime of conspiracy to resist, delay[,] or obstruct a peace officer[,] or obstruct justice as charged in counts 13 and 14." [*Id.* at p. 11]. The second was whether substantial evidence existed to support the theory that petitioner "aided and abetted Lee and Xaysene in resisting, obstructing or delaying a peace officer (as charged in count 16), [for which] the assaultive crimes [were] a natural probably consequence." [*Id.* at p. 21].

---

[3] The California Court of Appeal explained that because it had found sufficient support on two distinct theories, it need not explore the third. [Doc. No. 25-44 at p. 24, n. 9].

Turning to the first theory, the Court of Appeal engaged in a two-step analysis. First it evaluated whether there was sufficient evidence to support the finding that petitioner conspired to resist, delay, or obstruct law enforcement officers "in violation of [S]ection 148." [*Id.* at p. 12]. Once the Court of Appeal answered the first step affirmatively, it evaluated, and agreed with the trial court, that sufficient evidence existed to support the finding that the assaultive crimes were a natural and probable consequence of the conspiracy.

The crime of obstructing an officer in the course of their duties has three elements: "(1) the defendant wilfully resisted, delayed, or obstructed a peace officer (2) when the officer was engaged in the [lawful] performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *People v. Ghebretensae*, 222 Cal.App.4th 741, 759 (2013). And in California, "[a] conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act by one or more parties to such agreement in furtherance of the conspiracy." *People v. Russo*, 25 Cal.4th, 1124, 1131 (2001) (internal citations omitted). Among the evidence the Court of Appeal found persuasive regarding petitioner's conspiracy conviction was: (1) petitioner opening the door when officer's knocked and immediately slamming it in their faces; (2) petitioner telling officers, when questioned, that there were no weapons in the apartment; (3) petitioner's knowledge that because he was on probation with a waiver of his Fourth Amendment rights, a warrantless search of his residence was highly likely; (4) a conversation between petitioner and his probation office in which he was informed of a an imminent visit; (5) a recorded telephone call made from prison between petitioner and family members in which he said "that he 'was supposed to be dead'" and that "'it was a thin line between what I chose that day' and what could have happened." [Doc. No. 25-44 at pp. 12-14]. For those reasons, and others,

the Court of Appeal concluded petitioner was part of a conspiracy to resist law enforcement. [*Id.* at p. 16].

At step two, the Court of Appeal considered whether there was sufficient evidence to support a finding that the assaultive crimes were the natural and probable consequence of the conspiracy. [*Id.*]. The assaultive crimes need not have been intended by the conspirators at the time that they conspired. *People v. Guillen*, 227 Cal.App.4th 934, 938 (2014). Rather, the resulting crime must be "reasonably foreseeable," one for which "the consequence [need] not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough." *People v. Medina*, 46 Cal.4th 913, 920 (2009). The question of whether a crime is the reasonably foreseeable consequence of a conspiracy "is to be evaluated under all the factual circumstances of the individual case . . . and is a factual issue to be resolved by the jury." *Id.* The Court of Appeal did not mince words, asserting that "[u]nder *any* objective standard" a foreseeable consequence of a conspiracy to resist law enforcement officers with firearms "is that law enforcement officers, including any police dogs present, are going to be shot at and possibly injured or killed." [Doc. No. 25-44 at p. 18 (emphasis added)]. It then addressed petitioner's argument that the assaultive crimes were not the natural and probable consequence of the conspiracy. [*Id.* at p. 19]. Specifically, he argued that the police officers' decision to break down the door of the room in which Xaysene and Lee were barricaded was "an independent intervening cause [that] cut off any . . . liability." [*Id.*]. The question for the jury was "to determine whether the officers' response was so extraordinary that it was unforeseeable, unpredictable and statistically extremely improbable." [*Id.* at p. 20 *quoting People v. Brady*, 129 Cal.App.4th 1314, 1327 (2005)]. The jury convicted petitioner and the Court of Appeal could not conclude that the "officers' actions in response to the situation" were so abnormal as to warrant reversal. "Indeed, such a course of events is to be expected as a result of resistance to law enforcement directives to emerge from a barricaded space." [*Id.* at p. 20].

/ / /

1    The second theory the Court of Appeal evaluated was whether substantial evidence
2    existed to support a finding that petitioner *aided and abetted* Xaysene and Lee for the
3    assaultive crimes; "namely that [petitioner aided them] in resisting, obstructing or delaying
4    a peace officer . . ., leading to the assaultive crimes as a natural probable consequence."
5    [*Id.* at p. 21]. Under such a theory, the "person who aids and abets the commission of a
6    crime is a 'principal'. . ., and thus shares the guilt of the actual perpetrator." *People v.*
7    *Smith*, 60 Cal.4th 603, 611 (2014). Because no prior agreement need occur for such a
8    finding, the analysis focused on those explicit "acts [petitioner took] in support of Xaysene
9    and Lee's resistance." [Doc. No. 25-44 at p. 22].  The Court of Appeal identified the
10   following acts that supported the underlying conviction: (1) petitioner opened the door
11   when the police knocked, indicating he was awake (something he contested during trial)
12   and aware that Xaysene and Lee were home; (2) petitioner was on the scene when Xaysene
13   and Lee refused police orders to exit the room, from which a reasonable juror could infer
14   that he knew they had decided to resist the officers; and, (3) petitioner refused to answer
15   officers' questions whether Xaysene and Lee were in the apartment and then lied about
16   whether weapons were in the bedroom. [*Id.* at p. 22].  The Court of Appeal found its
17   "natural and probable consequence" analysis in the context of the conspiracy conviction
18   equally applicable and thus concluded substantial evidence supported the finding. [*Id.* at p.
19   24].

20       A review of the evidence identified by the Court of Appeal, and other similar
21   testimony, is more than sufficient for a jury to infer both that petitioner conspired to resist
22   law enforcement officers, and aided and abetted Xaysene and Lee to resist law enforcement
23   officers; crimes for which the natural and probable consequence was harm to officers in
24   the course of their duties.  Upon review, nothing suggests that the Court of Appeal
25   overlooked a meager record, or misapplied California law such that no reasonable jury
26   could have "found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. 307, 324
27   (1979). The Court cannot deem the Court of Appeal's rejection of petitioner's sufficiency

28

claim to be objectively unreasonable. *See* 22 U.S.C. § 2254(d). Accordingly, the Court **RECOMMENDS** that petitioner's claim for habeas relief on this ground be **DENIED**.

## II.    Review of Petitioner's Claims for Habeas Relief Due to Allegedly Wrongful Admission of Evidence and Ineffective Assistance of Counsel

During petitioner's trial, the prosecution successfully admitted testimony from a police officer explaining what actions the police would have taken had petitioner admitted firearms were present in the home. [Doc. No. 3 at pp. 43-45]. Petitioner asserts the trial court's admission of the evidence was prejudicial error for which habeas relief should be granted. In the alternative, petitioner contends that his counsel's failure to object to the admission of the evidence is grounds for habeas relief. The Court addresses each, in turn, and **RECOMMENDS** for the reasons explained in greater detail below that the petition for habeas on relief on these grounds be **DENIED**.

Because each claim turns on the same set of facts and events, the Court summarizes them here before turning to the analysis below. The Court of Appeal recounted the events at issue as follows:

Defense counsel objected only during the testimony of the first witness who was asked about what actions law enforcement would have taken had Charfauros stated that firearms were present in the apartment. Specifically, during the testimony of Deputy United States Marshal Michael Banez, the prosecutor asked Deputy Banez what he meant when he told Charfauros immediately after the shooting that "none of this would have happened" if Charfauros had revealed that there were firearms in the apartment. Defense counsel objected on relevancy grounds. The trial court did not sustain the objection on that ground, but then interposed its own objection that the question called for speculation, and it sustained its own objection. At a break in testimony, the prosecutor asked the trial court to reconsider its evidentiary ruling. The trial court explained that the question "What would you have done?" is speculative, but that the evidence that the prosecutor sought to elicit was relevant. The trial court suggested that although the question, as phrased, was speculative, "there may be alternate ways" to ask the question.

During the prosecutor's continued examination of Deputy Banez, the prosecutor returned to the issue but asked the question in a different way,

14

inquiring *why* Deputy Banez told Charfauros that "none of this would have happened" if Charfauros had revealed there were firearms in the apartment. Defense counsel objected on relevancy grounds, and the trial court overruled the objection. At no point did defense counsel interpose an objection on the ground that the question called for speculation. Deputy Banez replied that he made the statement because "the callout would have been different[]." It would have ended differently" if Charfauros told him guns were in the apartment. The prosecutor then followed up by asking "how" it would have ended differently. Defense counsel did not object, and Deputy Banez explained that he would have called for SWAT team assistance.

Following Deputy Banez's testimony, six police officers testified — sometimes at significant length — that they would have called for a SWAT team response had they obtained information that weapons were present in the apartment. The prosecutor's questions that elicited the officers' testimony generally inquired what the officers would have done differently had Charfauros told them that firearms were present. Defense counsel made no objection to any of the testimony.

[Doc. No. 25-44 at pp. 26-27].

## A. Petitioner's Claim for Relief Due to the Allegedly Wrongful Admission of Prejudicial Police Testimony

"[The Supreme Court] has stated many times that federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal citations omitted). A habeas petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997). Instead, he must show that the state court decision "violated the Constitution, laws, or treaties of the United States." *Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006) (quoting *Estelle*, 502 U.S. at 72 (1991)). Thus, a petitioner's entitlement to habeas relief turns not on whether a state evidentiary law has been violated, but whether the admission of the evidence "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (internal citations omitted); *see also Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) ("[The federal court's] role is limited to determining whether the admission of evidence rendered the trial so

fundamentally unfair as to violate due process."). And because the Supreme Court has "defined the category of infractions that violate fundamental fairness very narrowly" the burden for habeas relief on these grounds is substantial. *Id.* at 73.

This Court must also consider the potential procedural grounds that petitioner's claim must satisfy before turning to the substantive analysis of his habeas claim. Namely the independent and adequate state ground doctrine. *See, e.g., Coleman v. Thompson*, 501 U.S. 722 (1991). As a general rule, a federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (*internal citations omitted*). A state procedural rule is independent if the state law basis for a decision is not intertwined with federal law. *See LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001). And to be deemed adequate, the state procedural rule must be well-established and consistently applied. *See Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999).

The California Court of Appeal denied petitioner's appeal because he did not comply with the "contemporaneous objection rule" under the California Evidence Code. [Doc. No. 25-44 at pp. 25-29 *citing* Cal. Evid. Code § 353(a)]. A "defendant's failure to make a timely and specific objection on the ground asserted on appeal makes that ground not cognizable." [*Id. citing People v. Demetrulias*, 39 Cal.4th 1, 20 (2006) (internal citations omitted)]. Further, litigants are precluded from arguing evidence should have been excluded at trial for a reason different than their original objection. *People v. Partida*, 37 Cal.4th 428, 435 (2005). Petitioner's counsel did not object when the prosecution rephrased the question regarding what actions Deputy Banez would have taken had he known there were weapons in the room where Xaysene and Lee were barricaded. [Doc. No. 25-44 at pp. 26-27]. Defense counsel also did not object on the six other occasions when law enforcement officers testified about what actions they would have taken. [*Id.*]. Although petitioner objected early on to questions put to Deputy Banez, that objection was to a question different than the one that Deputy Banez – and the other law enforcement

officers – ultimately answered. Specifically, "the officers were asked *what they would have done differently* if Charfauros had told them there were firearms in the apartment. Indeed, when a similar question was asked of Deputy Banez, inquiring *how* things would have turned out differently if he knew firearms were present, defense counsel did *not* object. [*Id.* at p. 28 (emphasis original)]. Instead, petitioner's counsel had objected "to the prosecutor's question about *why* Deputy Banez told Charfauros that 'none of this would have happened' if Charfauros had revealed there were firearms in the apartment. . ." [*Id.*]. Therefore, petitioner had failed to preserve his objection for appellate argument and was denied consistent with the California Evidence Code.

The Ninth Circuit has repeatedly affirmed the denial of habeas relief on procedural default grounds because California's contemporaneous objection rule is independent and adequate. *See Zapien v. Davis*, 849 F.3d 787, 793 n. 2 (9th Cir. 2015); *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1093 (9th Cir. 2004); *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002); *Rich v. Calderon*, 187 F.3d 1064, 1069-70 (9th Cir. 1999). Petitioner's claim for relief was rejected by the California Court of Appeal after it applied California's contemporaneous objection rule, so the claim is procedurally defaulted on federal habeas corpus review.

Accordingly, this court **RECOMMENDS** that petitioner's claim on this basis be **DENIED**.

**B.    Petitioner's Claim for Habeas Relief Because of Ineffective Assistance of Counsel**

Petitioner argues, in the alternative, that the failure by his trial counsel to render contemporaneous objections to the questions posed by the prosecution constitutes a violation of his Sixth Amendment guarantee to counsel for which habeas relief must be granted.

Trial counsel is generally presumed competent, so the burden rests on the accused to overcome this presumption and demonstrate a constitutional violation. *United States v. Cronic*, 466 U.S. 648, 658 (1984). To prevail on a claim of ineffective assistance of

trial counsel, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Considering all of the circumstances, counsel must be given "wide latitude . . . in making tactical decisions." *Id.* at 689. Put differently, a reasonable tactical decision will not suffice for a finding that counsel was constitutionally ineffective. *Id.* When assessing an ineffective assistance of counsel claim, federal courts must also be "highly deferential," avoid "the distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

A habeas petitioner also cannot prevail on a claim of ineffective assistance of counsel without showing that counsel's performance prejudiced the defense. *Id.* at 687. To establish prejudice, a defendant must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Strickland* at 697.

The *Strickland* standard and the § 2254(d) standard set out under the Standard of Review, *supra*, are both 'highly deferential,' and when applied together, review is 'doubly' so. *Harrington*, 562 U.S. at 105 (*internal citations omitted*). "The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (*internal citations omitted*). "As a condition for obtaining habeas [relief] from a federal court, a state

prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

On direct appeal, the California Court of Appeal denied petitioner's arguments because (1) "defense counsel could reasonably have determined that the questions were not objectionable" and (2) the questions were not, as a matter of California law, objectionable. [Doc. No. 25-44 at p. 30]. Nothing in the record below supports petitioner's contention that his counsel's decision not to object was unreasonable, nor that the Court of Appeal's determination is "beyond any possibility for fairminded disagreement." *Strickland* at 786-87. Petitioner argues that "[t]here could have been no tactical advantage in, or satisfactory explanation for, not contemporaneously challenging the admission of this testimony on all the grounds it was objectionable given its crucial, though improper role, in the case." [Doc. No. 3 at p. 57 (internal citations omitted)]. As the Court of Appeal explained, even had counsel objected and asserted the testimony was speculative, it "would have lacked merit" because there was nothing speculative about the testimony at issue. [Doc. No. 25-44 at p. 32]. Officers testified to established "departmental policy" that "*requires* [ ] a SWAT team be called in when barricaded suspects are known to have firearms." [*Id.*]. Petitioner's counsel cannot be deemed ineffective for failing to make meritless objections.

As a result, the California Court of Appeal was correct in concluding that petitioner would be unable to prevail on his ineffective assistance of counsel claim, because he cannot establish prejudice under *Strickland*. This Court **RECOMMENDS** that petitioner's request for habeas relief on this ground be **DENIED**.

### III. Review of Petitioner's Claim for Habeas Relief Due to Allegedly Wrongful Imposition of Sentence Enhancements

Petitioner seeks habeas relief because the indictment did not explicitly allege that the attempted murders of police officers were willful, deliberate, and premeditated. [Doc.

No. 3 at pp. 57-59]. On review, the California Court of Appeal addressed the issue and found that while California Criminal Code Section 664(e) was violated because the indictment "did not charge that the attempted murders were willful," relief was nonetheless unavailing. [*Id.*]. It opined:

> Under the circumstances, because the defense proffered the CALCRIM No. 601 instruction on willful, deliberate and premeditated attempted murder, Charfauros had notice that the jury was going to be deciding that issue. Further, because the instruction was discussed while there were still several days of trial remaining and the People had not yet rested their case, there was a meaningful opportunity for Charfauros to introduce evidence on the issue of whether the attempted murders were willful, deliberate and premeditated. Charfauros thus had a "reasonable opportunity to prepare and present his defense," foreclosing any argument that his constitutional due process rights were violated due to the fact that the indictment did not charge that the attempted murders were willful, deliberate and premeditated. (*Jones, supra,* 51 Cal.3d at p. 317.)

> . . . . As we will explain, we conclude that Charfauros has forfeited any appellate challenge to the sentence enhancements on statutory grounds because he did not object in the trial court that the indictment lacked an allegation that the attempted murders were willful, deliberate and premeditated.

> Our analysis of the forfeiture issue is controlled by *Houston.* [54 Ca.4th 1186 (2012)]. In that case, our Supreme Court concluded that because the defendant had failed to object to instructing the jury on a theory that the attempted murders were willful, deliberate and premeditated, the defendant had forfeited any appellate challenge to the imposition of a sentence enhancement under section 664 based on the argument that the indictment did not allege the attempted murders were willful, deliberate and premeditated. (*Houston, supra,* 54 Cal.4th at pp. 1227-1228.) As *Houston* pointed out, the defendant received adequate notice of the sentence he faced, and "a timely objection to the adequacy of the indictment would have provided an opportunity to craft an appropriate remedy." (*Id.* at p. 1228.) Accordingly, he forfeited his appellate challenge to the sentence enhancement based on section 664. The same result applies here. As we have explained, Charfauros received notice of the allegations that the attempted murders were willful, deliberate and premeditated while there was still time to craft a remedy in the trial court. However, Charfauros did not object, and he accordingly forfeited his appellate

challenge based on the People's failure to comply with the statutory requirement in section 664, subdivision (f) that the indictment allege that the attempted murders were willful, deliberate and premeditated.

[Doc. No. 25-44 at pp. 38-40]. That analysis is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Petitioner received ample notice of the charges facing him. Indeed, he proffered a jury instruction that explicitly acknowledged as much. [*Id.* at p. 38]. Because "neither the reasoning nor the result of the state-court . . . contradicts [Supreme Court precedent]," petitioner is not entitled to habeas relief on this ground. *Early v. Packer*, 537 U.S. 3, 8 (2002). And finally, petitioner's request for habeas relief on the grounds that he was denied his Sixth Amendment right to counsel is also without merit. Had counsel objected to the incomplete indictment, the prosecution was well within its rights to "amend the indictment and cure the problem." [Doc. No. 25-44 at p. 42]. The point in trial when it was apparent to petitioner's counsel that the indictment was insufficient was not so far along that the trial court would have denied a motion to amend. [*Id.* at p. 41]. In short, the "likelihood of a different result" is barely "conceivable," let alone "substantial" as required under Supreme Court precedent. *Harrington*, 562 U.S. at 112 (2011)

Accordingly, this Court **RECOMMENDS** that petitioner's claims for habeas relief on these grounds be **DENIED**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3:17-cv-00266-BAS-KSC

## CONCLUSION and RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Cynthia Bashant under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons stated above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: 1) approving and adopting this Report and Recommendation; and 2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS HEREBY ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **Thirty (30) Days** from the date this Report and Recommendation is filed. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: July 16, 2018

Hon. Karen S. Crawford
United States Magistrate Judge